UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KBK, INC. | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) ) |
| RADER, FISHMAN & GRAUER, PLLC, | ) Civil Action No. 12-0226-RWR ) ) |
| Defendant. | ) ) ) |

## AMENDED COMPLAINT

Plaintiff KBK, Inc., ("KBK"), by and through its counsel, Zuckerman Spaeder LLP, files this Amended Complaint against Defendant Rader Fishman & Grauer PLLC ("Rader Fishman" or "Defendant"), and states as follows:

### INTRODUCTION

1. KBK brings this action for legal malpractice, breach of contract, breach of the implied duty of good faith and fair dealing, and breach of fiduciary duty arising out of Defendant's representation of KBK.

2. KBK engaged Rader Fishman to advise and represent it with respect to KBK's rights and obligations as the seller of goods that were the subject of a patent infringement claim brought by a third party against KBK's customer. Rader Fishman failed to advise KBK that it was subject to statutory warranty and indemnity claims by its customer and similarly failed to advise KBK that it had the statutory right to assume the defense of the patent action, including the right to settle the matter at its own cost. Further, Rader Fishman failed to advise KBK that had KBK's customer refused to allow KBK to assume the defense of the action, such customer

would lose its statutory warranty and indemnity rights. Rader Fishman's failure to so advise KBK was negligent and failed to meet the standard of care.

3. Rader Fishman's failure to advise KBK consistent with the standard of care caused damage and injury to KBK. The customer – by its own admission – was subject to a maximum of $13,000 in damages in the underlying patent action. That damages for alleged past infringement were negligible was information known or reasonably capable of being ascertained by experienced counsel at the outset of the infringement litigation. Had Rader Fishman rendered competent advice, consistent with the standard of care, KBK could and would have quickly taken over the patent action and settled the matter for a reasonably small amount. Alternatively, if its customer had refused to allow KBK to take over the matter, the customer would have lost its statutory indemnity and warranty rights. Instead, without the benefit of appropriate legal advice, KBK did not assert its rights while its customer ran up over a million dollars in legal bills in the underlying patent matter.

4. KBK's customer sued KBK to recover over $1.5 million in legal costs. Prior to resolving this matter, KBK paid approximately $1 million to its customer. KBK asserted that this payment was in full satisfaction of the claim for legal costs, but the customer disputed this position. KBK's customer also sought lost profits in the amount of at least $11 million dollars. On or about May 9, 2012, KBK entered into a confidential settlement agreement with its customer that resolved all of the customer's outstanding claims against it. As part of this settlement agreement, which has been produced to Rader Fishman under the terms of a Protective Order, KBK agreed to pay its customer an additional sum of money.KBK would not have had to face such claims had it been properly advised by Rader Fishman. KBK has also been injured by having to incur substantial additional legal costs – approximately $3,607,000, at

this point – defending the suit brought by its customer, costs that are the direct and proximate result of Rader Fishman's failure to render proper and competent advice as to KBK's rights and obligations.

## PARTIES AND JURISDICTION

5. KBK is a corporation organized and existing under the laws of New York. It has been in business for over 50 years. KBK's business is to facilitate the import and export of products into or from the United States.

6. Defendant Rader Fishman is a law firm, operating as a professional limited liability corporation organized and existing under the laws of Michigan. It has offices in Washington, D.C.; Bloomfield Hills, Michigan; Orange County, California; Silicon Valley, California and Tokyo, Japan. Rader Fishman advertises itself as "a leader in intellectual property litigation" that "develop[s] strategies for resolving disputes of any size or complexity." Rader Fishman advises on its website that "[i]n any IP dispute, it is essential to determine if a lawsuit is a sensible expenditure of corporate assets."

7. This Court has personal jurisdiction over Rader Fishman pursuant to D.C. Code 13-423.

8. This Court has subject matter jurisdiction over this action pursuant to D.C. Code §§ 1-204.31(a) and 11-921(a).

## FACTS

9. From mid-2008 through early January 2010, KBK sold approximately $700,000 of a lighting product to a lighting retailer known as American Induction Technologies, Inc. ("AITI"). The product was manufactured in China and sold to KBK, which then re-sold the product.

10. On or about November 30, 2009, AITI was sued for patent infringement in the United States District Court for the Central District of California in a case styled *Osram Sylvania, Inc., v. American Induction Technologies, Inc.*, 2:09-cv-08748-R-VBK (the "Patent Lawsuit"). The plaintiff, Osram Sylvania, Inc., ("Sylvania") alleged that the subject lighting product – which AITI purchased from KBK and then incorporated in an assembled product that it sold – infringed one of its patents.

11. In a series of meetings and conversations commencing in December 2009 and continuing thereafter, KBK informed AITI that it desired to explore the possibility of a rapid and low cost settlement that KBK would negotiate and fund. The maximum potential damages payable by AITI based on the volume of lighting product sold to date would have been de minimis. AITI, however, insisted that it did not want to explore a quick settlement and was determined to fight the lawsuit aggressively.

12. In mid-December 2009, KBK retained Rader Fishman to advise it with respect to the Patent Lawsuit. The lead lawyer on the engagement was Yoichiro Yamaguchi, a lawyer in Rader Fishman's Washington, D.C. office. Mr. Yamaguchi was at the time and remains an experienced attorney who specializes in the field of intellectual property and has authored over 30 articles on U.S. and Japanese intellectual property issues.

13. KBK was also represented by Thomas E. Bejin, a partner in Rader Fishman's Bloomfield Hills, Michigan office. Mr. Bejin concentrates his practice on intellectual property litigation, among other areas of practice, and has handled patent, trademark and trade secret matters in the state and federal courts throughout the United States, including California.

14. From the outset of its work for KBK, Rader Fishman advised and represented KBK with respect to indemnification issues between AITI and KBK regarding AITI's exposure and costs in the Patent Lawsuit. Rader Fishman also advised and represented KBK regarding the potential for an early settlement of the Patent Lawsuit. Rader Fishman knew that KBK was interested in a prompt settlement to the Patent Lawsuit. In furtherance of its representation with regard to the above issues, Rader Fishman had direct contact with AITI's counsel concerning the Patent Lawsuit.

15. KBK is informed and believes and thereon alleges that not later than January 11, 2010, attorneys at Rader Fishman knew or should have known that KBK had a duty to indemnify AITI under the California Uniform Commercial Code, yet never advised KBK that as of this point in time Rader Fishman had such knowledge.

16. On January 11, 2010, Rader Fishman reported to KBK that AITI had "requested that KBK bear the litigation costs" of the Patent Lawsuit and explored whether there was any agreement by KBK to "pay for litigation expenses" or any insurance carried by KBK that might bear such expenses. Rader Fishman also raised the issue of settlement of the Patent Lawsuit and informed its client that "[w]e could offer a settlement to Osram, but the settlement money might be enormous." Both Mr. Yamaguchi and Mr. Bejin thereafter reviewed KBK's insurance policy to see if coverage might be available to KBK.

17. That insurance policy identified as an "additional insured" any purchasers of KBK's products "where such purchase is governed by the Uniform Commercial Code (UCC) Section 2312.3 ... provided such [purchaser] is entitled to the warranty benefits under the UCC."

18. On February 25, 2010, Rader Fishman wrote to AITI's counsel that KBK was not contractually required to indemnify AITI with respect to the Patent Lawsuit. Rader Fishman did not address the issue of a statutory warranty and indemnity claim, either with AITI or with KBK.

19. Despite Rader Fishman's knowing or possessing information whereby it should have known about KBK's duty to indemnify under the UCC and the explicit provision in KBK's insurance policy that either alerted or should have alerted Rader Fishman to the possibility of claims for "warranty benefits" by purchasers of goods under Section 2312 of the UCC, at no point during the year following its retention in mid- December 2009 did Rader Fishman ever advise KBK that (a) it was subject to a statutory claim for warranty and indemnification, (b) there was only a de minimis sum at stake in the Patent Lawsuit which ought to be settled for a small amount, (c) KBK had the option of assuming the defense of the Patent Lawsuit even over the objection of AITI in order to secure such a settlement, or (d) KBK's insurance policy contained provisions covering purchasers of KBK's goods entitled to claim statutory warranty benefits as would be applicable to the then-existing circumstances with AITI.

20. The Patent Lawsuit remained in AITI's hands, and AITI vigorously litigated it, incurring nearly $2 million in legal fees and litigation expenses up through the time of KBK's settlement with AITI in May 2012. The docket sheet in the case reflects 278 separate entries through the end of 2011, including a counterclaim that AITI filed against Sylvania, a trial on that counterclaim, and appeals.

21. On December 15, 2010, approximately one year after KBK retained Rader Fishman, AITI wrote to Rader Fishman demanding once again that KBK indemnify AITI for the costs incurred in the Patent Lawsuit – but this time pursuant to the provisions of Section 2312 of the UCC. This letter was the first time that KBK learned of the possibility of such a statutory warranty and indemnity claim; Rader Fishman had never before advised KBK that such a claim could be made against it. Rader Fishman also never advised KBK that KBK had the right to assume the defense of the Patent Lawsuit. Rader Fishman was aware that under § 2607 of the California version of the UCC, a seller such as KBK could take over the defense of an infringement action, and if a buyer such as AITI refused it would be barred from thereafter seeking statutory warranty and indemnification. Rader Fishman never so advised KBK.

22. On or about February 1, 2011, AITI filed an action for indemnification against KBK in the Superior Court for Orange County, California. AITI's complaint stated a claim for statutory indemnification under UCC Section 2312. The case was thereafter removed to the United States District Court for the Central District of California and was litigated until the parties agreed to a settlement on May 9, 2012. At the time of settlement AITI asserted that it had incurred nearly $2 million in legal fees and litigation expenses in defending against Sylvania's claims in the Patent Lawsuit, for which AITI sought indemnification. AITI acknowledged in pleadings in the Patent Lawsuit that the maximum damages that it could have paid in the Patent Lawsuit was $13,000.

23. In its action against KBK, AITI also sought lost profits in the amount of at least $11 million from contracts that it allegedly lost during the pendency of the Patent Lawsuit.

24. Although KBK contested AITI's claims, it paid approximately $1 million to AITI towards AITI's legal fees in the Patent Lawsuit prior to settling the case. Additionally, as part of

the May 9, 2012 Settlement Agreement that resolved the case, KBK agreed to pay AITI an additional sum of money. KBK has also paid substantial amounts –approximately $3,607,000, at this point – to its own attorneys to defend the AITI suit. KBK may continue to incur damages as a result of this and other, related litigation.

## COUNT I

### Legal Malpractice

25.   KBK realleges and incorporates by reference paragraphs 1 to 23 of this Complaint as though fully set forth herein.

26.   An attorney-client relationship existed between KBK and Rader Fishman. The subject of the attorney-client relationship included AITI's right and claims to indemnification against KBK, KBK's exposure in the Patent Lawsuit, KBK's insurance coverage with respect to the Patent Lawsuit and AITI's claims against KBK arising out of the AITI lawsuit.

27.   Rader Fishman and its lawyers represented themselves as experienced and skilled attorneys familiar with patent litigation and capable of providing professional and competent advice and services, consistent with the standard of care owed by attorneys to their clients.

28.   As experienced practitioners, Defendant and its lawyers knew or should have known of the potential for a statutory warranty and indemnification claim by AITI. Indeed, Defendant and its lawyers were put on notice of the potential for such a claim by AITI's counsel and by the insurance policy that specifically recites the very provision of the UCC relied upon by AITI. KBK sent such insurance policy for Rader Fishman to review at the outset of the representation. Several different lawyers from Rader Fishman, in fact, reviewed the policy.

29. Defendant failed to meet the standard of care required of it by failing to advise KBK that it could be subject to a claim of statutory warranty and indemnification from AITI with respect to the Patent Lawsuit.

30. Defendant further failed to meet the standard of care required of it by failing to advise KBK that it had the statutory right to assume and direct the Patent Lawsuit and that if AITI refused to permit the defense to be assumed, then AITI would be foreclosed from claiming statutory warranty and indemnification.

31. Defendant further failed to meet the standard of care required of it by advising KBK that the damages to which AITI was subject to at the outset of the Patent Lawsuit "might be enormous" when it knew or should have known that the damages on $700,000 worth of goods that had been sold to AITI as of the time of the Patent Lawsuit would be de minimis.

32. Defendant further failed to meet the standard of care required of it by failing to advise KBK that its insurance policy provided coverage for purchasers of goods from KBK, like AITI, who are entitled to warranty benefits under Section 2312 of the UCC.

33. Had Rader Fishman properly advised KBK regarding the above matters, KBK would have resolved or otherwise ended the Patent Lawsuit for a nominal or de minimis amount, would not have been subject to a warranty or indemnity claim from AITI relating to the Patent Lawsuit, and/or would not have incurred the cost and expense of defending the suit by AITI.

34. Defendant's breaches of the standard of care directly and proximately caused KBK to suffer damages.

## COUNT II
### Breach of Contract

35. KBK realleges and incorporates by reference paragraphs 1 to 33 of this Complaint as though fully set forth herein.

36. KBK and Rader Fishman entered into a contract for legal services on or about December 24, 2009.

37. An implied condition of that contract was that Defendant would provide competent and professional legal services for KBK with respect to AITI and the Patent Lawsuit.

38. Defendant materially breached its contractual obligations by the acts and omissions as previously set forth and described in this Complaint.

39. Defendant's breaches of its contractual obligations were a direct and proximate cause of injury and damages to KBK.

## COUNT III
### Breach of Implied Duty of Good Faith and Fair Dealing

40. KBK realleges and incorporates by reference paragraphs 1 to 33 of this Complaint as though fully set forth herein.

41. KBK and Rader Fishman entered into a written contract for legal services on or about December 24, 2009, although Rader Fishman began providing legal services to KBK on or about December 14, 2009.

42. Rader Fishman, by law, assumed an implied duty of good faith and fair dealing.

43. Rader Fishman materially breached its implied duty of good faith and fair dealing by the acts and omissions previously set forth and described in this Complaint.

44. Rader Fishman's breaches of its duty of good faith and fair dealing were a direct and proximate cause of injury to KBK.

## COUNT IV
### Breach of Fiduciary Duty

45. KBK realleges and incorporates by reference paragraphs 1 to 33 of this Complaint as though fully set forth herein.

46.   As a result of their attorney-client relationship with KBK, Rader Fishman owed fiduciary duties to KBK, including the duties of loyalty, zealous and diligent representation, reasonable promptness, and disclosure.

47.   Rader Fishman breached its fiduciary duties to KBK by the acts and omissions previously set forth and described in this Complaint.

48.   Rader Fishman's breaches of its fiduciary duties were a direct and proximate cause of injury and damages to KBK.

**WHEREFORE**, KBK requests that the Court enter judgment in its favor and against Defendant Rader Fishman, for:

(a) damages according to proof;

(b) pre- and post-judgment interest;

(c) attorney's fees; and

(d) such other relief as the Court may deem just and proper.

Respectfully submitted,

KBK, Inc.

By: _____
Thomas B. Mason (DC Bar No. 413345)
tmason@zuckerman.com
Eric R. Delinsky (DC Bar No. 460958)
edelinsky@zuckerman.com
John B. Timmer (DC Bar No. 997309)
jtimmer@zuckerman.com
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800

## DEMAND FOR JURY TRIAL

Plaintiff, by and through undersigned counsel, demands a trial by jury with respect to all issues in this action.

_____
Thomas B. Mason